May it please the Court, my name is Roy Englert, I represent Appellant Law Dementor Trust Company of New York. I'd like to reserve three minutes for rebuttal. Granted. Mr. Englert, let me ask you, if I can, just because it's rather complicated, this case. The dispute is between the holders of the 1993 notes that were issued pursuant to the and the holders of the 1994 and 1996 notes or bonds that were issued pursuant to those indentures and the trustee is the trustee of the 1993 note holders. Correct. Is that right? Yes. Those are the parties. Yes. And the subsidiary guarantors were the subsidiary guarantors on all of the indentures, so they don't have a toe in this dispute, is that right? Correct. Okay. Go ahead. I'm sorry, I just wanted to. What is at issue here is whether the 1993 note holders should receive their pro rata share of some $213 million recovered from the guarantor subsidiaries or whether their share should go entirely to the 1994-96 note holders. Purchasers of publicly traded, the publicly traded 1993 notes were entitled to rely exclusively on the unambiguous text of the only contract by which they were bound, the 1993 indenture. Those purchasers cannot be required to speculate why their indenture was written as it was or about how their notes might be characterized years later. Excuse me. Erica, can we find out who's banging and. Well maybe they can stop.  I'm not sure, but maybe. Go ahead. As I was saying, the 93 note purchasers cannot and should not be required to speculate about why their indenture was written the way it was or about later characterizations, but that's exactly the position the bankruptcy court placed them in when it relied on extrinsic evidence. What do you think of the bankruptcy court's interpretation of New York law, which it ultimately resorted to, in its determination that it could consider extrinsic evidence? The bankruptcy court was clearly wrong, Judge Smith. I had my doubts as to her eventual determination as to it. How was the district court, how was the bankruptcy court wrong? Well the New York law, which is the same as it is in most jurisdictions. As I recall, initially she refused to consider extrinsic evidence and then reconsidered and she reconsidered based upon some New York authority that was submitted to her. Well she reconsidered based on the 1927 Atwater case as quoted in the Second Circuit's Terwilliger opinion from 2000, which actually states quite plainly our position that reliance on extrinsic evidence is improper to construe an unambiguous contract. In a unanimous opinion by Chief Judge Judith Kaye for the New York Court of Appeals, the familiar and eminently sensible proposition of law is that when parties set down their agreement in a clear, complete document, their writing should, as a rule, be enforced according to its terms. Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or to vary the writing. It did seem to me, speaking only for myself, a rather extraordinary move. I've always thought that when there was a determination of no ambiguity, there simply was no need and therefore a court should not resort to extrinsic evidence. And as I understand it, at the very least, both sides here do and have agreed that there is no ambiguity. That's correct. Does it matter whether the extrinsic evidence was permissible or not? If you just look at, because first the bankruptcy court looked at the documents and made a decision based on what the documents said and then considered the extrinsic evidence and assuming, without deciding, that she was not entitled to look at the extrinsic evidence, why was she in error in reviewing the documents themselves? If by the documents themselves you mean the indenture, she certainly was not in error by reviewing it. We think she misconstrued it, but she wasn't in error by reviewing it. And she said that they were not, that it was not ambiguous and that as a result, the holders of the subordinated debentures, indentures, were not entitled to recover, they were not, they were subordinated to the senior holders. Yes, but she misconstrued the indenture. Well, that's what we have to... Yes, but maybe I should explain in what ways I would suggest she misconstrued the indenture. Two undisputed propositions form the heart of our submission. One, Article 16 of the indenture subordinates the 1993 guarantees only to senior indebtedness of the subsidiary guarantors. Two, Clause 2A-5 of the definition of senior indebtedness... So what this dispute really focuses on is whether the definition of senior indebtedness includes upstream guarantees. Correct. And Clause 2A-5, it's undisputed, includes only downstream guarantees, whereas the guarantees at issue here are upstream. And we suggest that those two propositions completely answer the question before the court. Now, of course, the bankruptcy court and our adversaries take a different position. They rely on 2A-1 and 2D and various provisions of Article 3 of the indenture. I'd like to try to walk through those and explain why none can alter the conclusion evident from Article 16 in Clause 2A-5. Clause 2A-1 of the definition of senior indebtedness refers to, and I'm quoting, indebtedness of such person for money borrowed, including all such indebtedness evidenced by notes, dementors, or other securities issued for money, whether issued or assumed by such person. Note that it doesn't say whether issued, assumed, or guaranteed by such person. And that's significant. Our construction of that clause is that it applies to money borrowed by the person in question or assumed, and Appleby's construction is that it applies to money borrowed by absolutely anyone. You're referring to 2A-1? Yes, Your Honor. For one thing, construing the clause to apply to upstream guarantees would render Clause 2A-5 superfluous in violation of New York principles of contract instructions. There would be no reason to address guarantees at all in Clause 2A-5, let alone to limit the clause to downstream guarantees, if the phrase indebtedness for money borrowed in Clause 2A-1 were meant to reach guarantees of another person's borrowing. But your adversaries say it's not superfluous. They say it covers other things, and it might include this, but it's not superfluous. How do you answer that? Well, I'm not sure what else it covers. They've tried to construct some examples, but they're – They do in the brief. They do. They are not examples that bear any relation to the facts known to anybody in 1993. But even if there's not complete superfluity, there's another general principle of New York contract law, and it's stated in Section 203C of – Before you get to that, I have a very basic, even perhaps dumb, question. So assuming superfluity, assume you're correct that this is superfluous. I don't entirely understand how that helps you, what the point of that is. The point of that is – What do you mean? The point of that is under Appellee's construction, Clause 2A-5 is superfluous. It has no role to play because all guarantees are covered by other provisions of the indenture. That proves that their interpretation of the other provisions cannot be right because the general principle is that no provision should be rendered superfluous, and Clause 2A-5, which is carefully limited to downstream guarantees, would be superfluous under their construction. There's also a general principle stated in Section 203C of the Restatement that specific terms govern over general terms. And 2A-5 is the specific provision that covers guarantees, 2A-1 and 2D are much more general provisions and they're construing much more general terms. Even if we don't have complete superfluity, which I believe we do, but even if we don't have complete superfluity under their interpretation, the principle that the specific governs over the general still applies here and still means that the reference to guarantees in 2A-5 should be taken to be the provision of the indenture that talks about what guarantees are subordinated or are senior indebtedness and what guarantees are not senior indebtedness. Mr. Hearn seems to believe that this case can be decided on the basis of 2D, which appears to define senior indebtedness as an entity's monetary obligation as long as two criteria are met. The first is that an entity must incur a monetary obligation and here, of course, the subsidiaries have incurred a monetary obligation by reason of the guarantees. And secondly, such an obligation must be in respect of an indebtedness and it is in this case negotiated. So having met that definition, aren't the 94 and 96 obligations senior indebtedness? No, Your Honor, your question leaves out five words of 2D that change the entire analysis. Those five words are described in this Clause 2D. What Clause 2D does is it takes a bunch of ancillary things that relate to other kinds of indebtedness described elsewhere, I'm sorry, I think I misspoke and said described in this Clause 2D. What 2D, I'm getting myself bollocked up. The words are described in this Clause 2. What 2D does is it takes ancillary obligations that relate to other kinds of obligations described elsewhere in Clause 2. Why don't they include the obligations that Kaiser negotiated with respect to the bonds? But I don't know what you mean by referred to other obligations. That's what the described in this Clause 2 phraseology necessarily means. It means to understand what 2D is talking about. You have to look elsewhere in Clause 2. You mean other obligations could not possibly refer to the notes that Kaiser negotiated? Not in context because the full context is all penalties, fees, premiums, expenses, reimbursements, indemnity obligations and other monetary obligations of such person in respect of any indebtedness, obligation or guarantee described in this Clause 2. If all it meant were any monetary obligation in respect of any indebtedness, you wouldn't write it that way. This is meant to capture things like interest and fees and penalties that are related to things captured elsewhere within Clause 2. Hypothetically speaking, supposing we were to consider other obligations to include the notes that are the subject of this case? Their argument under 2D still wouldn't fly because they would still not be obligations in respect of any indebtedness, obligation or guarantee described in this Clause 2. And it's terribly, terribly important here that both Clause 2D and Clause 2E refer to indebtedness, obligation or guarantee described in this Clause 2. Guarantee is a word used in contradistinction to indebtedness and obligation in the very provision they rely on. When the drafters meant guarantee, they used the word guarantee. When they used other words, they meant other things. In addition, Clause 2D shouldn't be read to capture upstream guarantees for the same two general reasons why Clause 2A1 should not be so read. One, such a reading would very clearly render Clause 2A5 superfluous. If the definition is as broad as Judge Fuentes was postulating, 2A5 certainly has no role to play. You know, it seems to me that the phrase, other monetary obligations, is a very expansive phrase that would include so many different types of obligations. And if the drafters wanted that to mean miscellaneous costs or ancillary payments, they could very well have included that in the provision, but they didn't. They said all other monetary obligations. Well again, Your Honor, if it were used in a vacuum, it would be a very broad term. But to construe it as if it were used in a vacuum ignores the entire structure of 2D. It ignores the words of limitation in respect of any indebtedness, obligation, or guarantee described elsewhere in 2D. It renders Clause 2A5 superfluous in violation of settled principles of New York contract law, followed everywhere else for that matter. It violates the rule that the specific should govern over the general. As you suggest, Judge Fuentes, monetary obligations is a general term and a broad term. Guarantees is a specific term. In Clause 2A5, we have the drafters of this indenture saying very clearly which guarantees are senior indebtedness, namely downstream guarantees, not upstream guarantees. So the specific should govern over the general and 2D can't trump 2A5. Now if the Court concludes that the definition of senior indebtedness doesn't cover upstream guarantees, I believe that should be the end of this case. But the Bankruptcy Court thought Article 3 of the indenture had some relevance, and if I may, I'll address why the Bankruptcy Court was wrong about that. Go ahead and do that, but recognize that your time is up. But do it anyway because it will help us. Well let me quote two short phrases from Article 3 that dispose of Article 3 even without parsing the individual terms. There's a sentence on page 38 of the indenture, page 805 of the Joint Appendix that says, it is understood that the provisions of this Article 3 are and are intended solely for the purpose of defining the relative holders of the rights of the notes on the one hand and the holders of senior indebtedness of the company on the other hand. The drafters told us in so many words that Article 3 is about the relationship between notes and senior indebtedness of the company, not about the relationship between notes and senior indebtedness of the subsidiary guarantors. Besides that, Section 3.02 makes it clear in its first 15 words that it applies only upon any direct or indirect payment or distribution of assets or securities of the company. What are you referring to? Page 36. Yes, J.A. 803, page 36 of the indenture. Upon any direct or indirect payment or distribution of assets or securities of the company. The case before your honors has nothing to do with the distribution of assets or securities of the company. What is in dispute is the assets of the subsidiary guarantors that were distributed in bankruptcy. So that's two quick reasons why all of Article 3 doesn't apply. Do you have any questions? No. Okay. Thank you, Mr. Hemp. We'll get you back on rebuttal. Thank you, your honor. After you hear the response to you. Thank you. Mrs. Good morning, your honors. And may it please, excuse me, may it please the court, David Herr for the appellees. I will try to address a couple of the questions I just heard. I would like to talk about the extrinsic evidence issue at the end. Because the court doesn't need to reach that issue. You can affirm fully based on the bankruptcy court's proper analysis of the indenture. I agree with Judge Smith that it's pretty hard to reconcile allowing the extrinsic evidence in light of everybody's concession that there's no ambiguity. They disagree with what it means, but there's no ambiguity. But the New York authority cited by the bankruptcy court judge does say what she says it does. And that is there is a rule that you can't consider extrinsic evidence either to create an ambiguity or to vary the terms of an agreement. That's the parole evidence rule fully manifest in New York law. But the New York law recognizes that you can consider certain forms of extrinsic evidence, for example. And it's sort of like peeling an onion here, I think. But at the core, certainly most jurisdictions would let you consider not only the indenture, but also the note, the prospectus, and the notices that all comprise. That's a different point, isn't it, Mr. Herr, that if those other documents can be determined to be part and parcel, if you will, of the main agreement, then you're still not talking extrinsic evidence. Okay. That was argued differently below, but as long as we're all on that page, wonderful. Moving on to the other things that the bankruptcy court considered, there's ample support in New York law to consider that, especially the way she did it, of first looking at the contract, determining that it is unambiguous and that she found no evidence whatsoever in the contract for this hybrid note structure of subordinated notes, but if there's a default, then they're peri passu with senior indebtedness or senior guarantees. That's just not, it doesn't exist in the market, it doesn't exist in the world, and it doesn't exist in the language of the agreement. Mr. Herr, I think you would, my suggestion only, you would best go to the agreement and the language of the agreement instead of the extrinsic evidence issue. And I agree, that was my original intent. It was. I do think you don't even need to reach it because you need to affirm based on the language. Let's get to the language. Let me deal first with the argument. Well, let's look at Article 2 in its entirety because I think it's important to have that language clearly in mind. Article 2 starts with the provision that something will be senior indebtedness in subclause Y, the first paragraph of sub 2, Romanat 2, if it's designated in writing by the company as senior indebtedness in a notice to the trustee pursuant, etc. Okay, what page of the appendix? Can you help us? What page of the appendix? I believe that's 795. Okay, you'll get it in five minutes. You're reading 2 what? 2A or 2I? Are you in the definition section? No. I'm sorry, in the definition of senior indebtedness. That's what Article 2 is. Yeah, that's not 2, though. That's section 1, isn't it? No, it's, well. It is page 795. Okay, well, that's a different section. Yes, it's 795. I think it is. Romanat 2, it's the second paragraph down at the top of the page. Yeah, okay. To the extent incurred by such a person, and they go down to Y in the next line, designated in writing by the company as senior indebtedness in a notice to the trustee. That was done. The notices were given. They're in the record. We've cited them. There was no objection to that designation. So that brings these notes, these debentures to within the purview of Clause D. So the argument you heard from appellants this morning is that they're only modified if they're provided for in Clause D, I mean, sorry, in Clause Romanat 2. We know these debentures fit that additional qualification, and there's no dispute about that. And these indentures, you're talking about the 93 indentures, not the 94 and 96, right? No, the 94 and 96 debentures were the ones for which notice was given. Yes, to the trustee. Yes. Yeah, okay. So it relates to those, and that's what we're talking about. Are those, in fact, senior indebtedness? Yes, that's right. And they are by operation of this provision that says if notice was given, they fit within Clause D. It was given and not objected to. There's no dispute about that. This is what you need in order to get anyone... That's a condition precedent, is the way I characterize it, I believe, in my supplemental brief. And then it lists circumstances. There's A1. We explain why that fits, we think quite clearly, money borrowed. They do relate to money borrowed. There isn't the language in this clause that says money borrowed by such person. That phrasing is prevalent throughout this indenture, and I think there's a very strong argument that if they don't say by such person here, they're not seeking to qualify it in that term. But it does say whether issued or assumed by such person. That's within the parenthetical including. Yeah. Well, let's... If we're going to be parsing this this carefully, let's parse it... Don't we have to parse it? Well, we do. I think we have to read the whole agreement as well. Yeah. But while we're parsing this phrase, that's... It's money borrowed. And then there's a parenthetical, including all such indebtedness borrowed, etc. It doesn't say including only this form of indebtedness. So it goes back to the general phrase, indebtedness for money borrowed. Who's such person? Is such person Kaiser or is such person the subsidiaries? It's with respect to any person is the definition of senior indebtedness. No, but it says such person, capital P under person. We're talking about indebtedness incurred by a person. It would be the obligor on the guarantee. This is their subordination, their... It's the guarantor, not necessarily the company. The company is Kaiser, right? Yes. We're talking here about the guarantor. And again, I want to go back. Indebtedness. The definition of indebtedness couldn't be clearer. Page 784 of the appendix. The obligation of such person then would refer to the guarantees of the subsidiaries. It specifically says guaranteed by indebtedness incurs guarantees by such person. So... Well, in plain language... Say again. Are we talking about the guarantees of the subsidiaries? Yes. Because those are the guarantees that were given. And that's what we're talking about in this case. And I understand the argument on the other side to be that if they meant guarantees, they would have said guarantees. Isn't that right? They don't need to say guarantees. They don't need to illustrate. That's the reason... Isn't that the other argument? They do make that argument. It's not a reasonable one because it's one of the reasons for having a defined term like indebtedness defined to include guarantees. So you don't have to say including guarantees. You don't have to repeat all that verbiage throughout the document. They make the argument that it can't be covered up there because that would make the subsequent specification in 2A5 superfluous. But it's not superfluous. And it's not a hypothetical or remote sort of possibility. That specifically... The A5 guarantees by such person of any indebtedness by a subsidiary. That is limited. I mean, that is any indebtedness. Could be a lease. That's not an uncommon or rare thing to think of being covered by this. It's different from money borrowed. Could we go back a minute? Because you say indebtedness is defined to include guarantee. Indebtedness is defined on JA784. Where does it say indebtedness includes guarantees? Maybe I just may have... If you look in the very last line of JA784 subdivision F of that division. Indebtedness of others guaranteed by... Yeah. And my law clerk has put an exclamation point there. Okay, thanks. Good for him or her. To him, in this case. And when you look at the structure then of this definition in that context, A covers a number of categories. And then you get down to D where it says, just to be clear, and you know this is a common place in drafting, a catch-all provision, a spreader clause, whatever you want to call it. It covers all other monetary obligations of the person irrespective of any indebtedness. This is senior indebtedness by the definition. Or guarantee. Which covers, includes a wide variety of things. Now, I do want to talk about, or briefly about the provision, this argument that only Article 16 of the agreement should be looked at and not Article 3. I think it's fundamentally inconsistent with New York law to say, look at part of the agreement and ignore other parts of the agreement. Especially here where there is this intrinsic connection between guarantees and the primary obligation that they are guaranteeing. And it is not surprising at all that relevant provisions would occur in more than one place. I think you win, we win, using those definitional standards if you just look at 16. They represent indebtedness for money borrowed. Are you relying, Mr. Herr, entirely on 2A15 so that you are not relying on 2D? No, we do rely. I mean, I think you get to 2D as well. 2D comes into play only if you decide that for some reason, they're right about 2A15 not applying. I mean, I don't think that that's, I think we ought to win under A, but we would also win under. So if you had your druthers, you'd have this case decided on whether you qualify under 2A1. If he had his druthers, he'd take whichever way. I was going to say, we have two fairly detailed and thoughtful opinions from first the bankruptcy court and then an unusually detailed opinion from the district court. This is unusual for me, but I'd be happy with one word of firmness from your honors. But I think we're entitled to win under any, I mean, that's one of the difficult things about this case is I think we win under so many. You think the district court's opinion was unusually detailed? Yeah, maybe it's the minister's. The bankruptcy court's opinion was detailed. I'm not sure I would describe the district court's opinion as detailed. I mean. Now, this may be a regional difference, but at least in much of the Eighth Circuit, your honor, we see fairly summary affirmances of bankruptcy court decisions. Well, we do too, but not in argued cases. Yes. Not in this court. This is a, I thought both judges did a significantly careful job. Well, sure, they both came out your way. Well, they were brilliant in that respect, but I also thought they were, they were careful in any respect. I mean, with all due respect, I didn't think the district court's opinion was very detailed. All right. It took up all of five pages. Go ahead. It was. Unless you're looking at a different opinion. No, no, that's the opinion I'm thinking of. I'm just comparing it to other bankruptcy court. JA44 to JA49. Well, that doesn't matter, but it's just that I have to wonder about your characterization. Go ahead. The bankruptcy court was very detailed. No question. Yes, she was, yeah. Reading Articles 3 and 16 together, as you must under New York law, the fundamental premise, and it's reflected in several places we cite for in the brief, that the senior note holders are entitled to payment in full before any subordinated note holder is paying anything. That's a fundamental premise. The subordinated debt holders agreed that indirect payments on the notes are subordinated. Now, I think the only, we make this point in the brief, I think the only plausible category for indirect payments on the notes is payment on a guarantee of a note. But this language goes even further in our favor, and it says not only payments on the, direct or indirect, on the notes, but in respect to the notes. So an indirect payment in respect of the note, I think you have to reach far, far away from common sense language to get to an interpretation that says that wouldn't include payments on a guarantee. The X-Clause in paragraph 3.028. I have to ask you about X-Clause. It doesn't say X, right? No. X-Clause is a word of art in this industry. It's a term of art. Read Chief Judge Becker's opinion in your earlier case that we cite, the PWI's case, that does talk about it. But it's a simple concept and it reflects here unambiguously the purpose of preserving subordination. And it says the cardinal rule is no payments to juniors until seniors have been paid in full. But it does recognize that in a bankruptcy or similar proceeding, securities, something might pass to juniors as part of a reorganization. But if that happens, it still must be in such a way that juniors get something that's not on the same level as the seniors. And to us, that's unambiguous expression of intent. Both the guarantees and the notes are subordinated. And they're not at the same level. There is no peri passu treatment of them. It would violate those clauses. And there's the identical clause, identical language, in both 3 and 16. May I ask you a practical question? Yes, Your Honor. Is there enough money, was there, is enough money to pay all of the 94 and 96 notes or there isn't? No, Your Honor. Even they will only get a portion? They do not receive 100 cents on the dollar. The subsidiaries are in Chapter 11. Yes, they were. Why are they not? The company, the issuer and all the guarantors were in Chapter 11 so were administered together. And the note holders are just people, who were the note holders? General public who just bought the notes on the open market? We don't know for sure who they are now. They were purchasers of notes. Frankly, many of them were institutional purchasers. And many were so-called retail customers. And that's, you know, they were traded. Somewhere there's a list of names and I couldn't figure out who those names are. Either they got notice or the briefs were sent to them. Are they, were they the note holders? I can't figure out who they are. I'm not sure what Your Honor is referring to but it might have been the service list and the, some of the parts of the record include the notice list and the bankruptcy proceedings. Which include a wide variety of things irrelevant to this appeal at this point. That had nothing to do with this? Right. Okay. Thanks. I think the people on the red and blue briefs are the only people that have any horse left in this race. Yeah. Okay. I just wondered. Go ahead. I'm sorry. I do want to get back briefly to the extrinsic evidence because I think it's important. You know, in particular one form that's squarely recognized under New York law the practical construction of the parties when the courts give notice. I think we all know why you want to look at the extrinsic evidence. Your Honors. Let me, I see my red light is on. It's been on. We believe the bankruptcy court Excuse me. Let's find out. Do you have any more questions? I do not. Thank you. Do you have any more questions? Okay. You can wind up. They should be affirmed in all respects. Thank you for your attention. Thank you very much. Let me start with something very easy. Everybody agrees that the definition Well that's what we want to hear. Especially in this case you both have done a fabulous job and reminded me once again why I never wanted to be a transactions lawyer and would have been Well everybody agrees that the definition of indebtedness includes guarantees. We're not disagreeing with Mr. Herr on that. It also is a fact of no significance. What matters is the definition of senior indebtedness of such subsidiary guarantors. And it's undisputed that unless something is senior indebtedness of such subsidiary guarantors it's not covered. So the question the fact that indebtedness covers guarantees doesn't get you anywhere. Okay. Don't talk quite so fast. Okay. Please. A second point. The superfluity of 2A5 under Mr. Herr's position. Excuse me. Do you challenge any of the bankruptcy court's factual findings? No. But all the factual findings in this case relate to extrinsic evidence which was inadmissible. So the factual findings drop out for a reason other than being clearly erroneous. They drop out because they relate to improperly admitted evidence. Okay. All right. Thanks. Now while we're on the subject of improperly admitted evidence there was a colloquy between Mr. Herr and Judge Smith about matters that are actually part of the indenture as opposed to being explicitly referred to. Yes. And why are they explicitly referred to? This is important. Cause 2Y of the definition of senior indebtedness. They are just as Mr. Herr correctly said a condition preceding to being senior indebtedness. They are necessary to being senior indebtedness. They are not sufficient to make something senior indebtedness. So the mere fact that they are a step toward being senior indebtedness doesn't make them part of the indenture and if you think about it for a minute it would just wreak havoc with 2A5 as a definition of senior indebtedness being all guarantees by such person meaning the subsidiaries of any indebtedness referred to in clause 2A meaning the notes. So that the guarantees of the subsidiaries under his take on 2A5 would constitute senior indebtedness. No, I think we have a disconnect here Judge Fuentes. Appley's have never taken the position in brief or in today's argument that 2A5 covers upstream guarantees. Never. I'm not referring to upstream or downstream guarantees. I'm talking about the guarantees by the 2A5. That it means what it says. All guarantees by such person of any indebtedness referred to in this clause 2A of this is the key phrase of any subsidiary of such person and then some irrelevant words. Those words of any subsidiary of such person are what both sides agree makes that definition limited to downstream guarantees. Mr. Herr relies on 2A1 and 2D but everybody agrees that 2A5 everybody agrees cuts him my side's favor to the extent that it's the relevant provision. Now when Mr. Herr stood at the lectern and tried to give you an example of something that would make 2A5 not superfluous he didn't give you an example of something covered uniquely by 2A5 he gave you an example of something covered uniquely by 2A1. I think he said it didn't matter. He did say it didn't matter but I would respectfully disagree under that maybe but that is what he said. Right? Well he also tried to give you an example that cut against superfluity but the example doesn't work. I couldn't agree more with Mr. Herr's statement of New York Law  it's irrelevant. It has to do with distribution of the assets of the company. If you want to talk about distribution of the assets of the subsidiary guarantor you look to Article 16. The reason Article 16 is irrelevant excuse me is not because we disagree about New York Law it's because we disagree about what Article 3 says and our position which we think is very clear in the text is it's about the distribution of assets of the company which is not what happened in the court below assets of the subsidiary guarantors were distributed that's covered by hold it we're going to get it 872 your honor my chambers are here so I have it the definition of I'm sorry not the definition the subordination provisions of Article 16.03B cover any indirect payment of assets of subsidiary guarantors in there it can't be used as Mr. Herr asserts to mean existing guarantees referred to elsewhere in the document because there were no direct asserts to mean existing guarantors in there it